SAMUEL BOWMAN et al., Plaintiffs and Appellants, v. GLOBE
STEAM HEATING COMPANY, Defendant and Appellant,
and THE AMERICAN SURETY COMPANY OF NEW YORK,
Respondent.

### St. Louis Court of Appeals, May 27, 1899.

1. **Contract:** SURETY: MATERIAL CHANGE OF CONTRACT. In the case
at bar the agreement between the plaintiffs, the heating company
and the boiler company to make the payment of the third instalment
depend upon future tests of the boilers, was a material change in the
original contract. Held, that as this agreement was confessedly
made without the consent of the surety company the latter was dis-
charged.

2. ———: ———: ———: ADMISSIBILITY OF EVIDENCE. In the case at
bar the answer of plaintiffs in a former suit was admissible as an
admission on the part of the plaintiffs that they had made a separate
contract with the boiler company for the boilers.

*Appeal from the St. Louis City Circuit Court.*—HON.
SELDEN P. SPENCER, Judge.

AFFIRMED.

W. M. KINSEY and M. B. JONAS for plaintiff appellants.

The admission of the record in the case of the Spring-
field Boiler & Manufacturing Company v. Bowman and Wol-
fort, over the objection of appellants was error. Henry v.
Wood, 77 Mo. 281, 282; Quigley v. Bank, 80 Mo. 296.
Plaintiff's instruction number 4 should have been given by
the court. Every proposition in it is based upon evidence pro
and con, and it covers every phase of the case involved in the
defenses set up in the third and fourth paragraphs of the
American Surety Company's answer. A finding in favor of
appellants upon the facts detailed in this instruction would be

a complete answer to the principal, if not the only defense which the surety company claims to have. Roach v. Summers, 87 U. S. 165; Ryan v. Morlin, 65 Tex. 258. It was error to refuse appellants' instruction number 6, unless in the opinion of the court there was no evidence whatever to support the defense pleaded in the second paragraph of the American Surety Company's answer. Where there is an independent reciprocal obligation on the part of the creditor to pay the principal in instalments for work done under a contract as it progresses, a failure to make such payments as and when they become due, although made afterward, does not discharge the surety, especially where the time of such payments is not of the essence of the contract, and where the principal is in default himself when the payment or payments accrue.

W. B. Thompson and W. M. Hough for defendant appellant.

One can not recover damages for the non-performance of a contract which was occasioned by a primary breach thereof on his own part. Smith v. Keith & Perry Coal Co., 36 Mo. App. 567. A party can not maintain an action on a contract when he himself is the first to violate it by withholding its reasonable benefits from the other contracting party. Doyle v. Turpin, 57 Mo. App. 84. A failure to pay the instalments when they fall due under the terms of the contract, constitutes a breach of the contract. Bean v. Miller, 69 Mo. 384; Mugan v. Regan, 48 Mo. App. 461. * * * "Where a party to a contract interferes with its performance by the other to an extent which amounts to a refusal of performance, the party thus interfered with may recover as if he had performed his contract." Halpin v. Manny, 57 Mo. App. 59. The undisputed evidence showed that plaintiffs had committed breaches of the contract and were not entitled

to recover under said contract by reason of their breaches thereof. Smith v. Keith & Perry Coal Co., 36 Mo. App. 567.

W. B. THOMPSON and W. M. HOUGH for respondent.

Payments must be made as and when stated in the contract; otherwise surety is discharged. Gato v. Warrington, 19 So. Rep. 883; Backus v. Archer, 67 N. W. Rep. 913; Evans v. Graden, 28 S. W. Rep. 439; St. Marys College v. Meager, 11 S. W. Rep. 608. Any change in the contract without the surety's consent releases him. Leavel v. Porter, 52 Mo. App. 632; Beers v. Wolf, 116 Mo. 179; Casey v. Gunn, 29 Mo. App. 14; Hein Brewing Co. v. Hazen, 55 Mo. App. 277. Surety is either bound *in toto,* or not at all. 2 Brant on Suretyship, sec. 388; Bethune v. Dozier, 10 Ga. 235.

BIGGS, J.—On the thirtieth day of August, 1895, the Globe Steam Heating Company, one of the defendants herein, entered into a contract with Samuel Bowman and Joseph Wolfort, the plaintiffs herein, whereby it agreed to erect and install a heating apparatus for plaintiffs in a building then being built by them, for $4,800. By the terms of the contract the plaintiffs were to pay $1,000 when the pipe work was completed; $1,500 when the boilers were set in the building; $1,000 when the radiators were connected, and the remainder of the contract price when the apparatus was tested and accepted by the architect. It was also stipulated that the heating company might substitute for the boilers mentioned in the specifications their incandescent super-heating boilers and smoke consumer, upon a guaranty of satisfactory work, and if not, to replace them with boilers and smoke consumers according to the original specifications. It was further agreed that the work should be completed by the fifteenth day of October, 1895, and in case of failure the

heating company agreed to pay as liquidated damages $50 for every day thereafter that the work should remain unfinished. For the faithful performance of the contract the heating company as principal and the American Surety Company as surety, entered into a bond in the penal sum of $2,500, upon the following conditions, to wit: "Now, if said Globe Steam Heating Company shall well and truly perform and fulfill all and every the covenants, conditions, stipulations and agreements in said contract mentioned to be performed and fulfilled, and shall keep the said Samuel Bowman and Joseph Wolfort harmless and indemnified from and against all and every claim, demand, judgment, liens and mechanics' liens, costs and fees of every description incurred in suits or otherwise that may be had against them or the work to be done under said contract, and if the said Globe Steam Heating Company shall pay to said Samuel Bowman and Joseph Wolfort all damages they may sustain and all forfeitures to which they may be entitled by reason of the nonperformance or mal-performance of said contract by it, then said obligation shall be void, otherwise to remain in full force and effect." The present action is on the bond. The alleged breaches are that in addition to $2,000 paid on account of the contract the plaintiffs were compelled to pay judgments for materials sold and delivered to the heating company in the erection of the apparatus, amounting to $4,029.41; for completion of the work $39; that the boilers furnished were inferior in value and differing from those specified in the contract, which difference amounted to $1,200; that there was a delay of fifteen days in the completion of the work, which entitled the plaintiffs to claim as liquidated damages the sum of $750; that on account of the inferior condition of the boilers the plaintiffs were unable to light the building with their own dynamos, and were compelled to purchase electricity elsewhere at an additional cost of $797.40. The plaintiffs claimed damages to the amount of $3,865.82 in excess of the contract price.

Judgment was asked for the penalty of the bond to be satisfied upon the payment of $2,500. The answer of the heating company is a general denial, except the admission that the company executed the bond and contract. The American Surety Company, after admitting the execution of the bond as surety, interposed the following defenses, to wit, that the plaintiffs first violated the conditions of the bond in that they failed to pay the instalments for the work as they fell due, and that by reason of this the heating company was unable to pay the materialmen, which resulted in the filing and enforcement of mechanics' liens by them; that after the execution of the bond and without the consent of defendant the plaintiffs entered into an independent contract with the Springfield Boiler and Manufacturing Company to furnish the boilers for the apparatus, and that subsequently the boiler company took possession of the premises and put in the boilers to the exclusion of the steam heating company, and further that the plaintiffs voluntarily released the heating company from the full performance of the contract. The new matter in the answer was put in issue by the reply. Upon the issues thus framed the cause was tried before the court without the intervention of a jury, resulting in a judgment for the surety company and a judgment against the heating company for the penalty of the bond and an assessment of plaintiffs damages at the sum of twenty-five hundred dollars. The plaintiffs have appealed from the judgment releasing the surety company and the heating company has appealed from the judgment against it. The two appeals are submitted here upon a joint record.

We will first dispose of plaintiffs' exceptions. As before stated the claim of the surety company was, that as to the boilers the plaintiffs had made an independent contract with the Springfield Boiler and Manufacturing Company, and that in respect to the instalment to be paid when the boilers were set, the contract was changed by plaintiffs, the boiler

company and the heating company, by which that instalment was not to be paid until certain tests were applied to the boilers, and then only if the boilers proved adequate to furnish heat and light for the building, and that these subsequent agreements were made and carried out without its (the surety company) knowledge. In opposition to this the plaintiffs asserted that there was no independent agreement with the boiler company, and that the agreement between the plaintiffs, the steam heating company and the boiler company, that the third instalment should not be paid until the boilers were thoroughly tested, did not have the effect of releasing the surety company. Plaintiffs' theory of this branch of the case was presented by the following instructions, which the court refused to give:

"The court, sitting as a jury, declares the law to be, that if it appear and be found from the evidence in this case that the defendant Globe Steam Heating Company entered into a contract with the Springfield Boiler and Manufacturing Company for the construction of the boilers in question, that in pursuance of the said contract the latter company did build and construct the said boilers and ship them to St. Louis, that upon their arrival at St. Louis the defendant Globe Steam Heating Company set up and installed them in the Fraternal Building, that owing to delays in the construction of the said boilers they did not arrive in St. Louis until after the time when the said Globe Steam Heating Company was required to complete its contract with plaintiffs, that in consequence of this delay and before the arrival of the boilers, Bowman, one of the plaintiffs, wrote the Springfield Boiler and Manufacturing Company urging the speedy completion of the boilers and suggested in the letter addressed to the latter company about the time the said boilers were finished the desirability of making arrangements whereby the payment of the contract price of said boilers be made direct to the manufacturers thereof by plaintiffs; that after the arrival of the said boilers

in St. Louis, and before they were set in said building, the agent of the Springfield Boiler and Manufacturing Company procured from the defendant Globe Steam Heating Company, in pursuance of Bowman's suggestion, an order upon plaintiffs to pay the contract price of said boilers; that payment of this order was refused until after the boilers should be set in the building and satisfactorily tested, and that upon the said boilers being set or installed as aforesaid, plaintiffs in conjunction with the Springfield Boiler and Manufacturing Company and E. M. Bosley, representing the Globe Steam Heating Company, had the boilers tested; that after these tests further work was done upon the said boilers by the Springfield Boiler and Manufacturing Company at the request of the Globe Steam Heating Company, solely in order to strengthen and make them conform to the said contract under which they were furnished; that on or about the 16th of January, 1896, the said Bowman stated in the presence of Mr. Hawkes, representing the Springfield Boiler and Manufacturing Company, and Mr. Bosley representing the Globe Steam Heating Company, that plaintiffs would pay for the boilers direct if they experted equal to those specified in the original specifications for the steam heating apparatus of said building; that following this arrangement and in pursuance of an understanding or agreement between plaintiffs and the said Springfield Boiler and Manufacturing Company and with the knowledge and consent of the DECLARATION of Globe Steam Heating Company, the said law. boilers were further tested by Wm. H. Bryan, an expert, and following his suggestions, still further work was done upon the said boilers by the Springfield Boiler and Manufacturing Company, solely to strengthen and make them comply with said contract, and if the court further finds from the evidence that the said arrangement between plaintiff and said Springfield Boiler and Manufacturing Company for testing the said boilers, and also

the agreement of plaintiffs to pay for the said boilers direct at the request of the Steam Heating Company, if found to conform to the contract were made without the knowledge or consent of the American Surety Company, defendants herein, and that following the aforesaid agreements and tests, and in consequence thereof the Springfield Boiler and Manufacturing Company recovered of the plaintiffs herein a judgment for the contract price of said boilers still the aforesaid correspondence, tests, arrangements and agreements and the said judgment, do not operate in law to discharge the defendant American Surety Company from liability as surety upon the bond sued on in this case."

As to the alleged independent agreement with the boiler company the instruction was well enough. The evidence of the plaintiff was to the effect that the boiler company constructed the boilers under a contract with the steam heating company, and that all negotiations and dealings between plaintiffs and the boiler company, in reference to the boilers, were in subordination to the original contract between plaintiffs and the steam heating company, and of which the latter company had full knowledge. On the other hand the evidence of the surety company tended to prove that the boilers were delivered under an agreement independent of and to the entire exclusion of the steam heating company. Thus the evidence was conflicting as to whether there was an independent agreement. The remainder of the instruction is faulty, and for that reason the court was justified in refusing to give it. The agreement between the plaintiffs, the heating company and the boiler company, to make the payment of the third instalment depend upon future tests of the boilers, was a material change in the original contract, and as this agreement was confessedly made without the consent of the surety company, the latter was discharged. It is useless to cite authorities in support of the principle that the liability of

LIABILITY of surety

the surety is one of strict law. Any material change in his undertaking releases him.

As tending to prove the alleged independent agreement between plaintiffs and the boiler company, the court permitted the surety company to read in evidence the record of a suit instituted by the boiler company against the plaintiffs to recover the contract price for the boilers in question. The plaintiffs complain of the admission of this evidence. There is no merit in the complaint. The plaintiffs ADMISSIBILITY of in their answer to that suit admitted that they evidence. purchased the boilers from the boiler company but averred that no particular price was agreed on, that they were to pay only the reasonable value of the boilers. The answer was admissible as an admission on the part of the plaintiffs that they had made a separate contract with the boiler company for the boilers. Dowzelot v. Rollins, 58 Mo. 75; Anderson v. McPike, 86 Mo. 293.

The plaintiffs make other objections to the release of the surety company, which we do not deem it necessary to discuss as the result would not be changed. Our conclusion is that the judgment in favor of the surety company should be affirmed.

The steam heating company complains of no errors in the admission or exclusion of evidence. It offered no instructions. Its assignments of error challenge only the correctness of the findings of the court as to the facts, and that the assessment of damages was excessive. The first contention is that the primary breach of the contract was with the plaintiffs in that they failed to pay the instalments for the work when due (Smith & Keith, 36 Mo. App. 567). The first instalment of $1,000 was paid by plaintiffs October 10, 1895. There is nothing to show that the pipe work was completed prior to that time, therefore there was no default as to that instalment. Concerning the second instalment, which was to be paid when the boilers were set in the building, the

plaintiffs' evidence tended to prove that the plaintiffs, the steam heating company and the boiler company, agreed to postpone the payment of this instalment, which evidently was intended to pay for the boilers, until certain satisfactory tests of the boilers were made; that the tests were made and proved unsatisfactory. If the circuit court believed this testimony, which we must assume that it did, then there was no default as to this instalment. Besides at the time the boilers were set in the building the steam heating company itself was in default. The contract provided that the building should be completed by October 15, whereas the boilers were not set in the building until fifteen or twenty days thereafter. There was no attempt to explain or justify the delay.

The next contention is that the plaintiffs made an independent contract with the boiler company, thereby preventing the steam heating company from performing its contract. Assuming for the argument that there was an independent agreement as alleged the evidence of the plaintiffs tends to prove that it was made with the knowledge and approval of the steam heating company. In support of the judgment we must assume that the circuit court found that the independent agreement (if made) was with the consent of the heating company.

Lastly it is urged that the assessment of damages is excessive. As the finding of the court as to the damages was within the evidence, we must likewise overrule this assignment.

Finding no error the judgment against the steam heating company will likewise be affirmed. The costs of the joint appeal will be taxed equally against the plaintiffs and the steam heating company. All the judges concur.