## LOVITT v. RUSSELL, *Appellant.*

### Division Two, April 3, 1897.

1. **Appellate Practice:** EQUITY: RECORD ENTRIES. Where the evidence in a case in equity consists almost wholly of record entries, this court is just as competent to weigh and decide their effect as though it were present when they were made, and is not precluded from an examination of the evidence and the propriety of the findings of the trial court.

2. **Judgment:** COLLATERAL ATTACK. One whose land was sold on execution to satisfy a judgment of the circuit court assessing benefits in a condemnation proceeding, can not, in an action to quiet title, attack the title of the purchaser on the ground of irregularities not going to the jurisdiction.

3. ———: ———. The judgment of a court of competent jurisdiction, so long as it stands unreversed, can not be collaterally attacked.

4. ———: COLLATERAL ATTACK DEFINED. A collateral attack on a judicial proceeding is an attempt to avoid, defeat, and evade it, or to deny its force and effect. A suit to quiet title and to set aside a sheriff's deed to defendants which has been given to them because of their purchase at a sale in pursuance to a judgment in a proceeding condemning the land for street purposes, which judgment was, at the worst, only voidable, is a collateral attack.

5. **Voidable Judgments**: PRACTICE. Plaintiff's course was to proceed in the circuit court by bill in equity and ask to have the judgment set aside for fraud, or to have it set aside for irregularity by motion or petition for review.

6. **Kansas City Charter**: ABATEMENT: CONTINUANCE. Numerous continuances of a proceeding in the circuit court to assess benefits in a condemnation proceeding under a city charter will not deprive that court of jurisdiction of the case, notwithstanding the charter requires such proceeding to be disposed of at the first term.

7. **Practice**: FINAL JUDGMENT: CONTROL OF COURT. After a term has ended, all final judgments rendered at that term pass beyond the control of the court unless kept within its control by motions pending. ◆

8. ———: JUDICIAL SALES: POLICY OF SUPREME COURT. It is the policy of the Supreme Court to uphold judicial sales.

*Appeal from Jackson Circuit Court.*—HON. JOHN W. HENRY, Judge.

REVERSED AND REMANDED WITH DIRECTIONS.

*Kinley, Carskadon & Kinley* for appellant.

(1) This proceeding is a collateral attack on a judgment, hence unless the circuit court was absolutely without jurisdiction, the judgment will be held valid; irregularities, if any, will not affect the same; if the judgment was irregular or voidable, but not void, it will support the execution and sale, and the sheriff's deed will vest title in the purchaser. *Charley v. Kelley*, 120 Mo. 134; *Burke v. Kansas City*, 118 Mo. 309; 23 S. W. Rep. 613; *Wellshear v. Kelley*, 69 Mo. 351; *Allen v. McCabe*, 93 Mo. 143; *Mason v. Messenger et al.*, 17 Iowa, 261; *Quayle v. Railroad*, 63 Mo. 465. (2) The plaintiff took title to this property, subject to these proceedings, and is bound by all these proceedings. The owners of the lot were, as it is admitted in the record, properly in the mayor's court, and there is no complaint or claim of any kind affecting the proceedings until the case is

appealed to the circuit court; then after the circuit court acquired jurisdiction it is claimed that the failure to continue the proceedings from time to time affected the jurisdiction of the court. If these lapses affect the proceedings at all, they are mere irregularities, and do not affect the judgment. *Brown v. Walker*, 85 Mo. 262; *Townsend v. Cox*, 45 Mo. 402. (3) All intendments are indulged in to support judgments of courts of record where jurisdiction of the proceedings appears. Errors or irregularities will not interfere with such presumptions. The setting aside the verdict of the jury and the judgment rendered thereon by the circuit court on February 7, 1891, would not affect the jurisdiction of the court, nor would all subsequent proceedings be void. If error, it should have been remedied by appeal; this not having been done, it can not be attacked collaterally, as attempted in this case. 1 Black on Judg., par. 270; *Blake v. Lyon Mfg. Co.*, 77 N. Y. 626; *Hilton v. Bachman*, 24 Neb. 490; *Voorhees v. Jackson*, 10 Peters, 449–472; Van Fleet Coll. Att. Tit. Presumptions; *Ellis v. Jones*, 51 Mo. 180–186; *Crenshaw v. Snyder*, 117 Mo. 167, 177. (4) The power of the circuit court to hear these appeals from the mayor's court is a judicial power, and when rightly called into play, must be regarded within the sphere of its legitimate operation as giving the circuit court the authority to pass judgment in this case, which involves the exercise of judicial power and carries with it that conclusive sanction which is necessary to make the judgment effective. *Railroad v. Lackland*, 25 Mo. 515; *Holt Co. v. Cannon*, 114 Mo. 514; *Union Depot v. Frederick*, 117 Mo. 138; *Lingo v. Burford*, 112 Mo. 149.

*Clarence S. Palmer* for respondent.

(1) The charter provides that when the case be filed, it shall be immediately docketed upon the filing

of the transcript and stand for trial, and shall at the same term, and shall always, stand for trial, and shall not in any case be continued to any succeeding term, but for good cause may be postponed from week to week in the discretion of the circuit judge. Even if jurisdiction has been acquired in a condemnation case by the tribunal before which it is to be tried, such jurisdiction may be lost. Lewis on Em. Dom., sec. 603; Mills on Em. Dom., sec. 90. (2) If the statutory remedy is not strictly followed, no title or easement is obtained, and the condemning party has no defense to the usual common law action. Mills on Em. Dom. [2 Ed.], sec. 90; *Blaisdell v. Winthorp*, 118 Mass. 138; Lewis on Em. Dom., sec. 657; *Breese v. Poole*, 16 Ill. App. 551; *City of New Orleans*, in proceeding to open Dryades street, 11 La. Ann. 458. The last case is exactly in point as the facts are almost exactly identical with the facts in this case, where the jury did not report at the time specified. (3) In this case the execution was issued for the gross amount of benefits instead of the net amount of the benefits, after deducting damages. Execution must conform to judgment, and a material variance is fatal. 7 Am. and Eng. Ency. of Law, 124, note 1. (4) The defendant is not a purchaser without notice. He had notice of all proceedings in the suit upon which the judgment rested. *Mitchell v. Jones*, 50 Mo. 438; *McPike v. Allman*, 53 Mo. 551; *Downing v. Still*, 43 Mo. 309. (5) The order of the court granting a new trial will not be interfered with unless its discretion has been abused or injustice has been done. *McCullough v. Phoenix Ins. Co.*, 113 Mo. 606 (919). (6) A bill in equity to set aside a sale will be sustained in some cases where the sheriff's deed would be conclusive at law. *Groner v. Smith*, 49 Mo. 318.

478 SUPREME COURT OF MISSOURI,

GANTT, P. J.—This was a suit brought by the plaintiff to quiet title to all of lot ninety, Altamont, in Kansas City, Missouri, except five feet off the east end of said lot, and to have a sheriff's deed held and declared void.

The controversy arises over proceedings to condemn five feet off the east end of lot ninety, Altamont, for the purpose of widening Brooklyn avenue in said city. The proceedings were begun in the mayor's court of the city of Kansas, in pursuance of the charter, on July 10, 1888, at which time the title to said lot was in Zachariah F. Arnold, Cornelius Maloney, Charles Finley, Martin Regan, and John F. Williams, Jr., all of whom, it is conceded, were legally brought into said mayor's court by virtue of personal service or publication. On the thirtieth day of November, 1888, the above named parties, the owners of said lot, conveyed the same to T. C. Alexander, and he, on the same day, conveyed said lot to H. C. Arnold, and on the fifteenth day of April, 1889, said Arnold and wife conveyed said lot to plaintiff by warranty deed with reservations as follows: "Subject to a deed of trust, dated January 17, 1887, and recorded in book "B" 190, at page 369, to secure a note of even date for $700 and interest at eight per cent, also condemnation of five feet in Brooklyn and grading Thirtieth street." The clauses of warranty also excepted above encumbrances.

On November 13, 1888, the mayor of Kansas City made an order impaneling a jury to assess benefits and damages caused by such widening of said Brooklyn avenue, and on March 29, 1889, the mayor's jury returned a verdict and the same was on that day filed with the city clerk; on the sixth day of April, 1889, as required by the charter of Kansas City, the verdict of

the jury was confirmed by the common council and on the ninth day of April, 1889, the mayor made the proper order provided by the charter to be made by such officer after confirmation. Up to this period it is conceded by plaintiff that all proceedings in regard to this lot were legal and regular.

On April 11, 1889, on April 17, 1889, and April 24, 1889, affidavits for appeal were filed in the office of the city clerk, and on May 16, 1889, a complete transcript of all proceedings therein were filed in the office of the clerk of the circuit court of Jackson county, Missouri. On June 22, 1889, a jury was selected to assess damages and benefits in such proceedings. This was during the April term of that year. On June 28, 1889, the court made an order excusing the jury until July 6. The next entry of record is of date October 12, 1889, still during the April term of that year, at which time the court made an order that the jury be allowed to report their verdict on October 26, this being, during the October term of that year. On October 26, the jury filed its verdict or report, and on October 30, a motion for a new trial was made, and on February 24, 1890, the verdict of the jury was confirmed. On December 20, 1890, a motion was filed by Charles F. Quest and Margaret Quest to set aside the jury's verdict and the judgment rendered under said proceedings, which motion was on February 7, 1891, sustained. On February 28, 1891, the city counselor filed a motion to retax the costs, which on February 28 was sustained. On July 11, 1891, by order of court, the proceedings were transferred from division number 2 to division number 1, because division number 2 was about to adjourn and on July 15 division number 1 made an order continuing the proceedings to the first day of the next October term, being the twelfth day of October, 1891. On October 12, the proceedings were continued to Novem-

ber 2; on November 2 the proceedings were continued to November 7; on November 7 the city counselor asks that Nannie E. Long be made a party and the proceedings were continued to November 21; on November 21, 1891, the city counselor shows to the court that the old verdict had been set aside, and asks that new notices be sent out in the same way the original proceeding is started in the mayor's court, setting the day of hearing for January 11, 1892. On January 11, 1892, proof of service is made and the court orders publication to those not served and adjourns the proceedings until January 22, 1892; on January 22, 1892, the proceedings were adjourned to January 25, 1892; on January 25 a jury was selected and the proceedings were continued to January 30; on January 28 C. Frank makes a motion to be allowed to be made a party; on January 30, 1892, the proceedings were continued to February 1; on February 1 the hearing was begun and continued to the second, and it was further continued to the third; on February 3 an order was made extending the time for the jury to report their verdict until February 20; on February 20 the jury filed their verdict and were discharged. On May 2, 1892, the court made an order confirming the verdict and finding of the jury, and further adjudging that the amount assessed against the respective properties be a lien against such properties, and that the owners of property taken be compensated in the amount awarded by the jury. The lot in controversy was found to be damaged in the sum of $54 and benefited to the amount of $60.25. After the lapse of the proper time under the charter, an execution was ordered by the treasurer of Kansas City, to be issued by the clerk of the circuit court against property, against which benefits were assessed, which was done and placed in the hands of the sheriff of Jackson county, who, after

proper advertisement, sold the same, including the lot in question, defendant becoming the purchaser thereof and receiving a sheriff's deed therefor.

The petition also alleged collusion and conspiracy between bidders, but on the trial this was explicitly abandoned. On trial of the case the court found for the defendant and dismissed plaintiff's petition. Plaintiff filed a motion for a new trial which, after argument, was granted by the court, and from this order granting a new trial defendant appeals to this court.

Two grounds only were urged for a new trial. *First:* That said decision and finding and judgment are contrary to the evidence and weight of evidence. *Secondly:* The decision was contrary to law.

The suit is on the chancery side of the court. While disposed to defer to the findings of the circuit court in equity cases in which the witnesses testify orally and the credibility due each witness necessarily depends largely upon his presence and bearing before the court, yet this court is not bound to accept such findings. In this case it is apparent from the resume of the evidence that it consists almost wholly of record entries and this court is just as competent to weigh and decide their effect as if it had been present when the various concessions and entries were made and read. We are not precluded, then, from an examination of the evidence and the propriety of the setting aside of the finding for defendant and awarding a new trial. The case stands wholly upon the allegation that the judgment of the circuit court was void on account of the various irregularities and errors committed by the circuit court. Plaintiff distinctly disavowed any claim that defendant was guilty of collusion or conspiracy with other persons to prevent competition at the sale and defendant was not shown to have any knowledge whatever of the various defects in the proceedings

upon which plaintiff relies. There can be no doubt that the proceedings were all regular and lawful up to the time the case was submitted to the first jury in the circuit court, nor that the circuit court had acquired jurisdiction both of the subject-matter of this action and over the persons who owned the lot now in question when the suit was commenced. The plaintiff bought with full knowledge of the pendency of that proceeding. Her grantor, H. C. Arnold, in his deed, recited the pendency of the suit, and excepted the five feet from his covenants of title and warranty. She now says that the proceeding lingered so long in the court *that she forgot all about it and thus permitted her lot to be sold.* Her position is that the court lost its jurisdiction by continuing the case so long.

The charter provisions doubtless did intend that these proceedings should be summary and that delays in the disposition of these cases should be avoided, but a proceeding to widen a street at once suggests many causes for delay. The necessity of service, the appointment of guardians of minors, the accidents of death, the sale and transfer of property and substitution of new parties,—these and many other circumstances often afford excellent reasons for delay. Now it must be borne in mind that the proceedings, under review and collaterally assailed in this case, were in the circuit court of Jackson county, a court of general jurisdiction. No principle of law is more universally accepted in this country than that the judgment of a court of competent jurisdiction so long as it stands unreversed can not be impeached in a collateral proceeding, on account of mere errors, or irregularities, not going to the jurisdiction. *Union Depot Co. v. Frederick*, 117 Mo. 138; *Lingo v. Burford*, 112 Mo. 149; *Gray v. Bowles*, 74 Mo. 419; 1 Black on Judgment, sec. 261.

The plaintiff did not proceed in the circuit court

by bill in equity and ask to have the judgment set aside for fraud, nor did she attempt to set it aside for irregularity by motion or petition for review.

The proceeding to widen Brooklyn avenue was an entirety. Plaintiff elects to permit the judgment of condemnation to stand, but seeks to avoid the legal consequences of that judgment. But so long as the judgment stands unimpaired, the title of defendant, being unaffected by any fraud, is impregnable. A collateral attack on a judicial proceeding is an attempt to avoid, defeat, and evade it, or to deny its force and effect, in some way or manner not provided by law. Van Fleet on Collateral Attack, sec. 3; *Morrill v. Morrill*, 20 Oregon, 96; *Ibid v. Ibid*, 25 Pac. Rep. 362; 12 Am. & Eng. Ency. Law, 147. This is clearly a collateral attack. The facts do not bring this case within that principle of law which avoids a judgment rendered by a court which had once obtained jurisdiction but whose jurisdiction is subsequently lost by operation of law. It is unquestionably true that a court may lose jurisdiction which it has once rightfully acquired, after which it can make no further valid order or judgment. Thus it is well settled that after a term has ended all final judgments rendered at said term pass beyond the control of the court unless kept within its control by motions pending as provided by law. The contention of plaintiff in this case is that the various delays and what she terms discontinuances have wrought that result upon the proceedings for the ascertainment of damages and benefits in the Brooklyn avenue case.

It is assumed that because the charter requires a proceeding for opening or widening a street to be disposed of at the first term that a continuance beyond that term is a discontinuance of the action; that it abates. Now this is by no means a new question. In

*Posthlewaite v. Ghiselin*, 97 Mo. 420, a defendant died pending the action. No steps were taken to revive the action during the next three terms of the court, but after that a summons for revival was issued against the executor and he appealed and filed an answer but did not plead the special statute. In a subsequent collateral proceeding to enjoin the judgment it was held the court had jurisdiction to revive the case, and had not lost it by the failure to revive within the three terms.

So where a statute of New York authorized a personal judgment to be rendered in a mechanic's lien case within a year from the time of taking the lien, a judgment rendered after the year was held not void. *Schaettler v. Gardiner*, 47 N. Y. 404.

The general power of a circuit court to continue a case from one term to another can not be questioned, and the provision of the charter requiring a trial at the first term does not provide that a failure to comply therewith for good cause shall work a discontinuance, or render a judgment at a subsequent term void. In the absence of some such controlling and inexorable law we think such a consequence would be unreasonable and unjust. It is to be noted in this connection that not one of the landowners on said street at any time objected to any continuance granted, or moved the court to expedite the trial or require the jury to report. We do not think that the various continuances amounted even to irregularities.

Certainly plaintiff suffers hardship in the loss of her lot. As individuals we can sympathize with her, but to hold that as a matter of right she can demand a cancellation of the sheriff's deed to defendant upon the tender of his bid, interests, and costs, would be to abolish the policy pursued by this court for many years of upholding judicial sales.

Parties interested in actions at law can not complain if they negligently sleep on their rights. To allow plaintiff to recover on the facts stated would open the door for negligence in the defense of cases, and unsettle and imperil too many titles acquired in the best of faith.

We think the circuit court was clearly right in finding the issues for defendant and that it erred in granting a new trial upon the conceded facts of the case. The judgment will be reversed and the cause remanded with directions to enter a decree for the defendant. SHERWOOD and BURGESS, JJ., concur.